

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEOFFREY TODD HODGES, as Trustee
of the Frank Musolino, Jr. Irrevocable Trust
u/t/d 10/6/97, and as Trustee of the Ashley
Marie Musolino Irrevocable Trust u/t/d
10/6/97,

                                            Case No. 8:01-CV-660-T-17MAP

                        Plaintiff,

                        v.

EUGENE C. BUZZEO,

                        Defendant.

                        v.

FRANK MUSOLINO, SR.,

                        Counterclaim defendant.

_____/

## DEFENDANT'S AMENDED ANSWER TO THE COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND CLAIM PURSUANT TO FED. R. CIV. P. 13(h) and 19(a)

      Defendant Eugene C. Buzzeo ("Gene Buzzeo"), by and through his undersigned counsel,

hereby files his Amended Answer to Plaintiff's Complaint, Affirmative Defenses, Counterclaim

and Counterclaim Pursuant to Fed. R. Civ. P. 13 (h) and 19(a), as follows:

### FIRST DEFENSE

      1.    The allegations of paragraph 1 of the Complaint consist of purported legal

conclusions to which no response is required; to the extent that any response may be required,



said allegations are denied to the extent that it is averred or implied that plaintiff is entitled to any of the requested relief, including but not limited to monetary relief.

2.      Gene Buzzeo is without knowledge or information sufficient to form a belief as to the truth of allegations of paragraph 2 of the Complaint and, therefore, said allegations are denied.

3.      The allegations of paragraph 3 of the Complaint are admitted in part and denied in part.  Gene Buzzeo admits that plaintiff Hodges entered into the Stock Purchase Agreements, Promissory Notes, and Stock Pledge Agreements attached to the Complaint as Trustee of Frank's Trust and Ashley's Trust (collectively, the "Trusts").  Gene Buzzeo is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 3 of the Complaint and, therefore, said allegations are denied.

4.      The allegations of paragraph 4 of the Complaint are admitted in part and denied in part.  Gene Buzzeo admits that he is an adult resident of Pennsylvania.  The remaining allegations of paragraph 4 consist of purported legal conclusions to which no response is required; to the extent that any response may be required, said allegations are denied.

5.      In response to the allegations of paragraph 5 of the Complaint, Gene Buzzeo admits that on or about May 10, 2000, he and the Trustee entered into a Stock Purchase Agreement.  However, Gene Buzzeo denies that Exhibit A is a complete copy of that Stock Purchase Agreement, as the document attached as Exhibit A to the Complaint is missing a page.

6.      The allegations of paragraph 6 of the Complaint are denied as stated.  Gene Buzzeo admits that the Stock Purchase Agreement provided, in part, for the sale of one million shares of stock in Buzzeo, Inc. to the Trusts for a price of $2,500,000.00.  However, the Stock

Purchase Agreement is a written document that speaks for itself; to the extent that any of the allegations of paragraph 6 vary from or purport to interpret the terms of the Stock Purchase Agreement, said allegations are denied.

7.      The allegations of paragraph 7 of the Complaint are denied as stated.  Gene Buzzeo admits that on or about May 10, 2000, one million shares of Buzzeo, Inc. were transferred from Gene Buzzeo.  However, those shares were not transferred to the Trustee; rather, as exhibited on the Stock Certificates attached to the Complaint, the shares were transferred to the individual Trusts.  By way of further answer, Gene Buzzeo avers that the Stock Purchase Agreement is a written document that speaks for itself; to the extent that any of the allegations of paragraph 7 vary from or purport to interpret the terms of the Stock Purchase Agreement, said allegations are denied.

8.      The allegations of paragraph 8 of the Complaint are denied as stated.  Gene Buzzeo admits that on or about May 10, 2000, funds in the amount of $1,000,000 were transferred by the Trustee as partial payment for the stock transaction.  Gene Buzzeo further admits that, on or about May 16, 2000, the Trustee executed Promissory Notes and Stock Pledge Agreements, copies of which are attached to the Complaint.  By way of further answer, Gene Buzzeo avers that the Stock Purchase Agreement is a written document that speaks for itself; to the extent that any of the allegations of paragraph 8 vary from or purport to interpret the terms of the Stock Purchase Agreement, said allegations are denied.

## COUNT I – FRAUDULENT INDUCEMENT

9.     In response to the allegations of paragraph 9 of the Complaint, Gene Buzzeo incorporates by this reference his responses to the allegations of paragraphs 1 through 8, inclusive, as if fully set forth herein.

10.     The allegations of paragraph 10 of the Complaint are denied.  As to the factual allegations of paragraph 10, to the contrary, never at any time did Gene Buzzeo make any of the listed representations to Hodges.  The remaining allegations of paragraph 10 consist of purported legal conclusions to which no response is required; to the extent that any response may be required, said allegations are denied.  By way of further answer, said allegations are denied, as well as all allegations not specifically responded to herein.

11.     The allegations of paragraph 11 of the Complaint consist of purported legal conclusions to which no response is required; to the extent that any response may be required, said allegations are denied.  By way of further answer, Gene Buzzeo incorporates by this reference his response to the allegations of paragraph 10 of the Complaint, stated above, as if fully set forth herein.

12.     The allegations of paragraph 12 of the Complaint consist of purported legal conclusions to which no response is required; to the extent that any response may be required, said allegations are denied.  By way of further answer, Gene Buzzeo incorporates by this reference his response to the allegations of paragraph 10 of the Complaint, stated above, as if fully set forth herein.

13.     The allegations of paragraph 13 of the Complaint consist of purported legal conclusions to which no response is required; to the extent that any response may be required, said allegations are denied.

14.     The allegations of paragraph 14 of the Complaint consist of purported legal conclusions to which no response is required; to the extent that any response may be required, said allegations are denied.

15.     The allegations of paragraph 15 of the Complaint consist of purported legal conclusions to which no response is required; to the extent that any response may be required, said allegations are denied.

## COUNT II - VIOLATION OF THE FLORIDA SECURITIES ACT

16.     In response to the allegations of paragraph 16 of the Complaint, Gene Buzzeo incorporates by this reference his responses to the allegations of paragraphs 1 through 15, inclusive, as if fully set forth herein.

17.     The allegations of paragraph 17 of the Complaint consist of purported legal conclusions to which no response is required; to the extent that any response may be required, said allegations are denied.

18.     The allegations of paragraph 18 of the Complaint consist of purported legal conclusions to which no response is required; to the extent that any response may be required, said allegations are denied.

19.     The allegations of paragraph 19 of the Complaint consist of purported legal conclusions to which no response is required; to the extent that any response may be required, said allegations are denied.

20.     Gene Buzzeo is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20 of the Complaint and, therefore, said allegations are denied.

21.     The allegations of paragraph 21 of the Complaint consist of purported legal conclusions to which no response is required; to the extent that any response may be required, said allegations are denied.

## COUNT III - BREACH OF CONTRACTUAL REPRESENTATIONS AND WARRANTIES

22.     In response to the allegations of paragraph 22 of the Complaint, Gene Buzzeo incorporates by this reference his responses to the allegations of paragraphs 1 through 8, inclusive, as if fully set forth herein.

23.     The allegations of paragraph 23 of the Complaint are denied.  Gene Buzzeo incorporates by this reference his response to the allegations of paragraph 10 of the Complaint, set forth above, as if fully set forth herein.  By way of further answer, Gene Buzzeo avers that the Stock Purchase Agreement is a written document that speaks for itself; to the extent that any of the allegations of paragraph 23 vary from or purport to interpret the terms of the Stock Purchase Agreement, said allegations are denied.

24.     The allegations of paragraph 24 of the Complaint consist of purported legal conclusions to which no response is required; to the extent that any response may be required, said allegations are denied.  By way of further answer, Gene Buzzeo incorporates by this reference his response to the allegations of paragraph 10 of the Complaint, set forth above, as if fully set forth herein.

25.     The allegations of paragraph 25 of the Complaint consist of purported legal conclusions to which no response is required; to the extent that any response may be required, said allegations are denied.

26.     The allegations of paragraph 26 of the Complaint consist of purported legal conclusions to which no response is required; to the extent that any response may be required, said allegations are denied.

WHEREFORE, Defendant Gene Buzzeo respectfully requests that this Court enter judgment in his favor dismissing the Complaint with prejudice and awarding the defendant his costs of suit, together with such other and further relief as this Court deems appropriate.

## SECOND DEFENSE

27.     The Complaint fails to state a claim upon which relief may be granted.

## THIRD DEFENSE

28.     The purported claims set forth in the Complaint are barred as a result of plaintiff's consent or ratification.

## FOURTH DEFENSE

29.     The purported claims set forth in the Complaint are barred by the doctrines of waiver, estoppel and/or unclean hands.

## FIFTH DEFENSE

30.     The purported claims set forth in the Complaint are barred by virtue of plaintiff's contractual representations and warranties that he had access to the corporation's books and records to conduct his due diligence and that he had, in fact, conducted such due diligence to his full satisfaction.

## SIXTH DEFENSE

31.     Buzzeo, Inc. (the "Company") is a corporation founded in May 1993, to market unique computer software products and related services.

32.     By March 1999, the Company had successfully raised capital through three private placements of its stock.

33.     In September 1999, the Company successfully completed its fourth private placement, a transaction negotiated with Frank Musolino, Sr. ("Musolino"), believed to be the grantor of the Trusts which are the plaintiffs in this action.

34.     By this transaction, Musolino invested approximately $10,000,000.00 in the Company (the "$10 million transaction"), purchasing stock and receiving warrants in exchange for the much needed cash infusion.

35.     Hodges, the Trustee-plaintiff here, who is an attorney, served as Musolino's counsel in connection with this transaction.

36.     Hodges drafted all of the documentation attendant to this $10 million transaction.

37.     At the time of this transaction, Musolino, at a meeting attended by Hodges, represented to the Company and to Gene Buzzeo, then the Chief Executive Officer of the Company, that the purpose of his investment was to assist the Company in its plans to go public. Musolino further represented to Gene Buzzeo that he had the resources to help the Company reach this goal and that he was willing to use them to effect that result.

38.     As counsel to Musolino in connection with his purchase of a $10 million stake in the Company, Hodges had substantial access to information concerning the Company and an obligation to investigate the Company prior to entering into the $10 million transaction with the Company.

39.     In addition, according to the transaction documents, in connection with this $10 million transaction warrants were issued to   a company called First American Investment Banking Corporation ("First American") which appears to have served as broker and/or financial

advisor to Musolino in connection with the transaction. According to public records, First American employed at least one registered securities broker at the time of the transaction; in addition, Hodges, the plaintiff-Trustee is listed as an officer and/or director and/or member of First American, which lists as its address the same address that is listed in the Stock Purchase Agreement as the address for Hodges for notices in connection with the agreement. Thus, it would appear that Hodges, acting through First American, had additional fiduciary obligations to investigate the Company, both prior to Musolino's entering into the $10 million transaction with the Company and thereafter.

40.   The September 1999 Stock Purchase Agreement contains the same representations and warranties, concerning pending and threatened claims against Buzzeo, Inc., disputes that do or could materially adversely affect the Company, concerning actual or threatened litigation or proceedings against the Company, and concerning the filing of corporate tax returns, about which Hodges complains in the Complaint filed in this action.

41.   Further, the September 1999 Stock Purchase Agreement also contains representations and warranties by Musolino, as purchaser, that he has had the opportunity to perform due diligence relating to the transaction and the Company and that due diligence, in fact, had been performed to Musolino's satisfaction. These are precisely the same purchaser representations and warranties that are contained in the documentation utilized in the transaction of which Hodges complains in the Complaint filed in this action.

42.   In May 2000, Musolino, this time acting through his Trusts and assisted by Hodges, who served as counsel to Musolino and the Trusts, as well as Trustee to the Trusts, determined to make additional investments in the Company, which was in substantial need of additional funding.

KRLSPGH:#47741 v1 - Buzzeo/Amended Answer Affirmative Defenses/Counterclaim

43.     At that time, the Trusts, directed by Musolino, invested another $6,132,000.00, purchasing 1,022,000 shares of Buzzeo, Inc. at $6.00 per share directly from the Company and also receiving warrants which reduced the average price per share to $4.00 per share.

44.     A number of conditions were placed on this investment, which was much needed by the Company. Musolino advised that unless these conditions were met, he would not invest the $6.132 million in the Company. The Company had no other immediately available alternatives for raising the required cash.

45.     First, Musolino demanded that Gene Buzzeo sell to him - through the Trusts - one (1) million shares of Buzzeo's own personal stock holdings in the Company at a price of $2.5 million or $2.50 per share, a price substantially less than the $4.00 per share effective purchase price paid in connections with Musolino's transactions and Musolino's Trusts's transaction directly with the Company. The purpose and effect of this transaction, which is the subject of plaintiff's claims, was to reduce the overall per share price of the $6.123 million transaction with the Company and also to effect a change in control in the Company, as Musolino, together with his Trusts, would become the single largest shareholder in the Company.

46.     Knowing the importance of the cash infusion to the Company, and believing that Musolino's interest was to help take the Company public, Gene Buzzeo agreed to the transaction.

47.     An additional condition Musolino imposed upon these two transactions was that Hodges be named to the Board of Directors of the Company, which also occurred as promised immediately following the transaction.

48.     Finally, in connection with these transactions Musolino demanded that Gene Buzzeo agree to enter into a three (3) year employment and non-competition contract with the

KRLSPGH:#47741 v1 - Buzzeo/Amended Answer Affirmative Defenses/Counterclaim

Company.  The terms offered by Musolino to Gene Buzzeo were that Gene Buzzeo would serve as Chief Executive Officer of the Company for three (3) years at a salary of, at least, $175,000.00 per year, plus benefits and bonuses.  Gene Buzzeo agreed to commit to the Company for three (3) years, as Musolino was demanding, and believed the employment contract to be an important part of the consideration he would receive in exchange for entering into the transaction.

49.    Because the anticipated employment agreement had not been drafted at the time of the May 2000 stock transactions, but since the Company needed the investment funds immediately, Hodges added a provision to the Stock Purchase Agreement expressing the intention that Gene Buzzeo and the Company would enter into an employment and non-competition agreement, upon terms acceptable to Musolino, acting through his Trusts.  See Stock Purchase Agreement at ¶ 5(j).

50.    Hodges, acting as counsel to Musolino and counsel to the Trusts, as well as Trustee, prepared all of the documentation attendant to both the $6.123 million transaction with the Company and the $2.5 million transaction with Gene Buzzeo.

51.    The documentation attendant to the May 2000 Trusts's transaction directly with the Company contains the same representations and warranties, concerning pending and threatened claims against Buzzeo, Inc., disputes that do or could materially adversely affect the Company, concerning actual or threatened litigation or proceedings against the Company, and concerning the filing of corporate tax returns, about which Hodges complains in the Complaint filed in this action.  This language mirrored that used by Hodges in drafting the documentation utilized in the initial $10 million investment by Musolino.

52.     Similarly, since all of the transaction documents were drafted by Hodges, the documentation attendant to the Trusts's transaction directly with the Company contains the same representations and warranties by the Trusts, concerning their opportunity to perform due diligence and the fact that due diligence had been performed to the Trusts's satisfaction, that are contained in the documentation utilized in the transaction directly with Gene Buzzeo. This is the very same language that Hodges utilized in the documentation attendant to the initial $10 million transaction by Musolino.

53.     The Trusts's May 2000 purchase of stock directly from the Company occurred on the very same day that they purchased the shares owned by Gene Buzzeo; in the case of both transactions the Stock Purchase Agreement and the closing of the transaction occurred on the same date.

54.     Although Hodges now seeks to rescind the transaction made directly with Gene Buzzeo, neither Hodges nor Musolino has pursued any similar action against the Company claiming fraud or breaches of warranty or violations of the Florida Securities Law in connection with these same representations and warranties.

55.     In addition, although Hodges now seeks to rescind the transaction made directly with Gene Buzzeo, claiming that the Trusts's purchase of Gene Buzzeo's one (1) million shares was the result of some sort of fraud relating to the Company's condition and circumstances, the Trusts made further substantial investments in the stock of the Company subsequent to the transaction placed at issue by the Complaint.

56.     In late July 2000, Musolino, now the largest single shareholder of the Company, demanded and was given a position on the Buzzeo, Inc. Board of Directors.

57.    In August 2000, through the exercise of a convertible promissory note, the Trusts collectively purchased an additional 1,250,000 shares of the Company's stock, at a price of $6.00 per share, in addition to receiving warrants that reduced the average price per share to $4.00 per share, for a total investment of an additional $7,500,000.00.  The Trusts made these investments pursuant to, among other documents, a Note and Warrant Purchase Agreement, again drafted by Hodges and again containing the very same representations and warranties set forth in the documentation attendant to all of the other transactions in Buzzeo, Inc. stock by Musolino and by Musolino's trusts, which are now claimed to have been breached in connection with the Trusts's transaction with Gene Buzzeo placed at issue by the Complaint.  At this time, both Hodges and Musolino both occupied seats on the Company's Board of Directors.

58.    Musolino himself also made additional investments in Buzzeo, Inc., through stock purchases and through loans made either by him individually or by companies he owns and/or controls known as First American Holdings, Inc. and/or First Index Fund Advisors, Inc.

59.    At the time of the May 2000 transactions complained of Musolino, the grantor of the Trusts, had owned $10 million worth of Buzzeo, Inc. stock for some eight (8) months.  Given the size of this pre-existing stake in the Company and the representations and warranties given by Musolino and by the Trusts relating to their opportunity to perform, and their satisfaction with, due diligence performed, Musolino, on his own account, and Hodges, as Musolino's counsel, as an officer/director/member of the investment advisor to Musolino, as the drafter of all of the documentation utilized in connection with every one of the stock purchase transactions either by Musolino or Musolino's Trusts, as counsel to the Trusts, and as Trustee of the Trusts, either were or should have been fully informed about all material matters relating to the Company.

60.     Thus, either these representations and warranties now complained of as false were, in fact, true, as Hodges consistently repeated them in all of the documentation he prepared for all of the transactions in Buzzeo, Inc. stock, or they were not material to the transactions and were mere boilerplate language, never relied upon and never intended to be relied upon by the Trusts in making their investments.

61.     Further, to the extent that Hodges has claimed in the Complaint that he reasonably relied upon these representations and warranties, this allegation is without basis in fact, since Hodges had the responsibility, as well as the means and opportunity to conduct appropriate due diligence at the Company concerning these issues and any other issues. This is confirmed, not only by the fact that he had served as counsel to Musolino and as investment advisor to Musolino in connection with the initial purchase of the $10 million stake in the Company, but also by the very representations and warranties of the Trusts set forth in the Stock Purchase Agreement, in which Hodges warrants, *inter alia*, that he had accomplished due diligence to his satisfaction. See Stock Purchase Agreement at ¶¶ 4(c)(vii) and 5(e).

62.     Finally, given that Musolino and the Trusts invested further additional funds in the stock of the Company, following the May 2000 transactions and following Hodges's and Musolino's addition to the Company's Board of Directors, to the extent that any of the representations and warranties actually were breached, the Trusts suffered no harm as the result of these claimed breaches.

WHEREFORE, Defendant Buzzeo respectfully requests that this Court enter judgment in his favor dismissing the Complaint with prejudice and awarding the defendant his costs of suit, together with such other and further relief as this Court deems appropriate.

## COUNTERCLAIM

### Buzzeo v. Plaintiff

## BREACH OF CONTRACT

63.     Gene Buzzeo incorporates herein by this reference the allegations set forth in his Sixth Defense to the allegations of the Complaint, set forth at paragraphs 31 through 62, inclusive, above, as if fully set forth herein.

64.     Gene Buzzeo entered into the transaction complained of because the Company was in need of further outside investment not readily available elsewhere and because Musolino conditioned his additional investment in the Company upon various terms, including that (i) Gene Buzzeo sell to Musolino, or his designee, one (1) million shares of Gene Buzzeo's personal holdings in the Company at a bargain price of only $2.50 per share in order to increase Musolino's percentage of control of the Company and in order to reduce the overall per share price of the transaction, and (ii) Gene Buzzeo commit to serve as Chief Executive Officer of the Company for three (3) years, pursuant to an employment and non-competition agreement.

65.     Gene Buzzeo agreed to the terms of the transaction demanded by Musolino, understanding that the employment agreement was a part of the consideration he would receive for the sale of his stock at such a discounted price.

66.     Because the cash infusion to be provided to the Company in connection with the May 2000 transaction between Musolino, acting through his Trusts, was substantial and much needed, although the employment agreement between the Company and Gene Buzzeo had not yet been drafted, Gene Buzzeo agreed to complete the sale of his own personal shares to the Trusts and Hodges, as Trustee and as counsel to both the Trusts and to Musolino, incorporated language into the Stock Purchase Agreement placed at issue in the Complaint that contemplated

KRLSPGH:#47741 v1 - Buzzeo/Amended Answer Affirmative Defenses/Counterclaim

Gene Buzzeo's entry into the three (3) year employment agreement. See Stock Purchase Agreement at ¶ 5(j).

67.     Hodges joined the Board of Directors of the Company shortly following the May 2000 transactions, as required by Musolino's conditions for his Trusts's entering into these transactions.

68.     Hodges led a three person committee of the Board whose task it was to complete the contemplated employment and non-competition agreement with Gene Buzzeo. However, exercising his control of the committee and his control, either directly through his position as Trustee of the Trusts, which were substantial investors in the Company, or indirectly as counsel and advisor to Musolino, also a substantial investor and a continuing source of funding for the Company, Hodges acted to ensure that no such employment agreement ever was even offered to Gene Buzzeo, in breach of the parties's agreement and in breach of the express terms of the Stock Purchase Agreement Hodges places at issue in his Complaint.

69.     Hodges's breach of the Stock Purchase Agreement has caused Gene Buzzeo to suffer damages in an amount equal to that which he would have earned as Chief Executive Officer under the contemplated three (3) year employment agreement, which Gene Buzzeo understood would pay him a salary of at least $175,000.00 per year, plus benefits and bonuses.

70.     Moreover, Hodges's breach of the Stock Purchase Agreement entitles Gene Buzzeo to additional damages in an amount equal to the sums still unpaid for the purchase of his shares, or $1.5 million, which was to become due and payable in May 2003.

71.     According to the terms of the Promissory Note and Stock Pledge Agreement executed in furtherance of the Stock Purchase Agreement, Gene Buzzeo is entitled to all remedies available under the Florida Uniform Commercial Code, which includes the right of

Gene Buzzeo to seek a money judgment in the amount of the $1.5 million ($750,000.00 from each Trust).  <u>See</u> Stock Pledge Agreement, attached to the Complaint, at ¶ 7.

72.    In addition, the Stock Pledge Agreement provides that Gene Buzzeo will be entitled to his attorneys' fees if he successful in prosecuting this Counterclaim against the Trusts. <u>See</u> Stock Pledge Agreement, attached to the Complaint,  at ¶ 13.  Gene Buzzeo has retained counsel to represent him in this action and has agreed to pay his counsel a reasonable fee such services.

73.    Finally, since Gene Buzzeo agreed to enter into the Stock Purchase Agreement for the sale of his personal shares at a greatly reduced price in exchange for the other consideration set forth in the Agreement, the non-receipt of which forms the basis for this breach of contract counterclaim, Gene Buzzeo is entitled to additional damages in the amount of $1.5 million, representing the difference between the $2.50 per share price set forth in the Stock Purchase Agreement and the $4.00 per share effective price paid by Musolino and Musolino's Trusts in connection with their other transactions in Buzzeo, Inc. stock.

WHEREFORE, Gene Buzzeo demands judgment against the plaintiff in an amount of at least  three million five hundred twenty five thousand dollars ($3,525,000.00), plus interest, attorneys' fees, costs of this action, and such other and further relief as this Court may deem appropriate.

## COUNTERCLAIM PURSUANT TO FED. R. CIV. P. 13(h) and 19(a)

### Buzzeo v. Frank Musolino

### TORTIOUS INTERFERENCE WITH CONTRACT AND/OR WITH PROSPECTIVE ECONOMIC ADVANTAGE

74.     Gene Buzzeo incorporates herein by this reference the allegations of his Sixth Defense to the allegations of the Complaint, set forth at paragraphs 31 through 62, inclusive, above, and the allegations of his Counterclaim, set forth at paragraphs 63 through 73, inclusive, above, as if fully set forth herein.

75.     Gene Buzzeo pleads this Counterclaim Pursuant to Fed. R. Civ. P. 13(h) and 19(a) against Musolino in the alternative to his counterclaim pleaded against the plaintiff-Trustee. Gene Buzzeo's right to relief under this alternative counterclaim arises out of the same transactions or occurrences or series of transactions or occurrences and common questions of fact and/or law common to both counterclaim-defendants will arise in this action. Musolino is a resident of the State of Florida, residing in Hillsborough County, Florida.

76.     It is believed and averred that plaintiff-Trustee Hodges took all actions relating to the transactions between Musolino and the Company, the Trusts and the Company, and the Trusts and Gene Buzzeo upon express instructions from Musolino.

77.     Musolino  participated in and directed the negotiation of the transaction between the Trusts and Gene Buzzeo.

78.     Musolino demanded as a condition for his continued investment in the Company, either individually or through his Trusts, that Gene Buzzeo commit to entering into a three (3) year employment contract with the Company to serve as the Company's Chief Executive Officer at a salary of at least $175,000.00 per year, plus benefits and bonuses, which term Gene Buzzeo

understood to be a part of the consideration he was receiving for agreeing to sell one (1) million shares of his stock to Musolino or his designee, Musolino's Trusts, at the reduced price of $2.50 per share.

79.     Shortly following the closing of the stock transaction between Gene Buzzeo and the Trusts, and notwithstanding Musolino's knowledge of the contractual representation that an employment contract would be proffered to Gene Buzzeo, Musolino, as the single largest shareholder in the Company, tortiously used his influence with the Board of Directors, acting both directly and through plaintiff-Trustee Hodges, to assure that Gene Buzzeo would not receive the contemplated employment agreement, in breach of Musolino's agreement with Gene Buzzeo and also in breach of the Stock Purchase Agreement between Gene Buzzeo and the Trusts.

80.     Because of Musolino's tortious conduct, Gene Buzzeo has suffered damages in the an amount equal to that which he would have earned as Chief Executive Officer under the contemplated three (3) year employment agreement, which Gene Buzzeo understood would pay him a salary of at least $175,000.00 per year, plus benefits and bonuses.

81.     Gene Buzzeo agreed to enter into the transaction placed at issue by the Complaint because of representations made and conditions imposed by Musolino in connection with the transaction and because of the consideration recited in the Stock Purchase Agreement between Musolino's Trusts and Gene Buzzeo.  The non-receipt of this consideration forms the basis of Gene Buzzeo's breach of contract counterclaim against the plaintiff-Trustee.  Further, based upon Musolino's tortious conduct in acting to prevent Gene Buzzeo's realization of the full consideration for which he bargained forms the basis for this tortious interference counterclaim against Musolino.

82.   Thus, Gene Buzzeo seeks additional damages from Musolino in the amount of $1.5 million, representing the $1.50 per share difference between the reduced $2.50 per share price at which Gene Buzzeo sold his stock to the Trusts in May 2000, and the $4.00 per share price paid by Musolino and by Musolino's Trusts to the Company for additional Buzzeo, Inc. stock two months later, in July 2000, multiplied by the one (1) million shares sold by Gene Buzzeo in the May 2000 transaction, which is the subject of the Complaint.

WHEREFORE, Gene Buzzeo demands judgment against Frank Musolino, Sr. in an amount of at least  $2,025,000.00, plus interest, costs of this action, and such other and further relief as this Court may deem appropriate.

## COUNTERCLAIM

### Buzzeo v. Plaintiff and Frank Musolino

### SHAREHOLDER OPPRESSION

83.   Gene Buzzeo incorporates herein by this reference the allegations of his Sixth Defense to the Complaint, set forth at paragraphs 31 through 62, inclusive, above, and the allegations of his  Counterclaims set forth at paragraphs 63 through 82, above, as if fully set forth herein.

84.   Musolino and his Trusts, which are controlled by Musolino,  own or control a majority of the shares of the Company.

85.   Counterclaimant Gene Buzzeo is one of the minority shareholders of the Company; Gene Buzzeo currently owns or controls 2,608,690 shares of the Company.

86.   Musolino, himself, and working through plaintiff-Trustee Hodges, as part of their design to acquire the assets of the Company through his position as single largest shareholder of

the Company and directing two (2) votes on the Board of Directors, knowingly forced bad management decisions to destroy the value of the Company with the result that the stock of the Company is now worthless..

87.     Through their actions, Musolino and plaintiff-Trustee Hodges have stripped the assets of the Company.

88.     Musolino has taken the assets of the Company under his own control and is now using them for his own personal gain.

89.     The foregoing actions were taken in an effort to oppress the other Company shareholders and in violation of the fiduciary obligations that shareholders owe to one another.

90.     Musolino and plaintiff-Trustee Hodges, through this oppression and breach of fiduciary duty have caused damages to Gene Buzzeo, in that Gene Buzzeo's stockholdings are now worthless.

91.     Gene Buzzeo's damages, valued at the total number of shares under his control at the $4.00 per share price paid by Musolino and the Trusts, exceed $10 million.

WHEREFORE, Gene Buzzeo demands judgment against Frank Musolino, Sr. and against the plaintiff in an amount to be determined at trial, but in excess of $10 million, plus interest, costs of this action and such other and further relief as this Court may deem appropriate.

**JURY TRIAL DEMAND** - GENE BUZZEO HEREBY DEMANDS A TRIAL BY JURY ON
ALL ISSUES SO TRIABLE.

Respectfully submitted,

KLETT ROONEY LIEBER &
SCHORLING
A Professional Corporation

Amy J. Greer
Admitted Pro Hac Vice
One Oxford Centre - 40th Floor
Pittsburgh, PA 15219
Telephone: (412) 392-2000
Facsimile:  (412) 392-2128


BUCHANAN INGERSOLL
PROFESSIONAL CORPORATION

Samuel W. Braver
Florida Bar No. 549074
Patricia A. DeLeo
Florida Bar No. 0093645
401 East Jackson Street
Suite 2500
Tampa, Florida 33602
Telephone: (813) 222-8180
Facsimile:  (813) 222-8189

TRIAL COUNSEL FOR DEFENDANT
EUGENE C. BUZZEO

Dated: June /5 , 2001

## CERTIFICATE OF SERVICE

I HEREBY assert that a copy of the foregoing Amended Answer and Affirmative

Defenses and Counterclaim was served on Joseph H. Varner, Esquire, Holland & Knight, P.O.

1288, Tampa, Florida 33601, Counsel for Plaintiff/Counterdefendant by ~~U.S. Mail~~ hand delivery this 15th

day of June, 2001.

BUCHANAN INGERSOLL
PROFESSIONAL CORPORATION

Samuel W. Braver
Florida Bar No. 549074
Patricia A. DeLeo
Florida Bar No. 0093645
401 East Jackson Street
Suite 2500
Tampa, Florida 33602
Telephone: (813) 222-8180
Facsimile:  (813) 222-8189

TRIAL COUNSEL FOR DEFENDANT
EUGENE C. BUZZEO

KRLSPGH:#47741 v1 - Buzzeo/Amended Answer Affirmative Defenses/Counterclaim